**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANN BARTHOLD, | : | |
| Plaintiff, | | |
| | | |
| v. | : | |
| | | |
| BRIARLEAF NURSING & | | CIVIL ACTION |
| CONVALESCENT CENTER NURSING | : | NO. 13-2463 |
| HOME; BRIARLEAF NURSING & | | |
| CONVALESCENT , INC.; and JOANNE | | |
| NEWFIELD c/o BRIARLEAF NURSING & | : | |
| CONVALESCENT CENTER NURSING | | |
| HOME | | |
| Defendants. | : | |

**MEMORANDUM**

**Jones, II**                                                          **June 27, 2014**

I.       **INTRODUCTION**

Pending before the court is a Motion to Dismiss filed by Defendants Briarleaf Nursing

and Convalescent Center Nursing Home, Briarleaf Nursing and Convalescent, Inc. and Joan

Newfield,[1] seeking dismissal of Plaintiff's employment discrimination Complaint.  For the

reasons set forth below, Defendants' Motion shall be granted.

a.  **Background**

This case arises out of events that occurred during Plaintiff's employment as a certified

nursing aide at a nursing home operated by Briarleaf Nursing & Convalescent, Inc. ("Briarleaf").

Plaintiff, who is Haitian and immigrated to the United States in 1981, began her employment

---

[1] In their Motion to Dismiss, Defendants inform that their names as set forth in the caption of
Plaintiff's Complaint are incorrect.  In particular, Plaintiff mistakenly refers to Defendant Joan
Newfield as "Joanne Newfield."

with Briarleaf on April 14, 2000 and was terminated on January 4, 2010. (Compl. ¶¶ 17, 30).  At

the time of her termination, Plaintiff was 62 years old.  (Compl. ¶ 11).  During Plaintiff's

employment, she was subject to the authority of Defendant Joan Newfield ("Newfield"), who

was employed by Briarleaf as the Director of Nursing. (Compl. ¶ 14). The crux of Plaintiff's

Complaint is that she was "subjected to discipline in the form of written warnings, suspensions,

and termination for conduct and/or infractions that did not occur or conduct and/or infractions for

which other similarly-situated Caucasian and younger employees were not disciplined." (Compl.

¶ 23). Plaintiff alleges that this conduct amounted to "harassment and discrimination based upon

her gender,[2] age, national origin, and race, which included a hostile work environment and

retaliation." (Compl. ¶ 22). Based on same, Plaintiff claims that Defendants are liable pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), 3(a) ("Title VII"), the Age

Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a), (d) ("ADEA"), and the

Pennsylvania Human Relations Act, 33 P.S. 955(a), (c)–(e) ("PHRA").

## II.    <u>STANDARD OF REVIEW</u>

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief.*" Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation

and citation omitted).  After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A

---

[2]   In the boilerplate language contained within Paragraph 22 of her Complaint, Plaintiff cites
gender as a basis for Defendants' alleged discrimination against her.  Inasmuch as gender is not
mentioned elsewhere and the remainder of the Complaint contains absolutely no facts to support
a gender discrimination claim, this Court will not be addressing same.

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678

(citing *Twombly,* 550 U.S. at 556).  This standard, which applies to all civil cases, "asks for more

than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; accord *Fowler v.*

*UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ("All civil complaints must contain more

than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation

omitted).[3]


## III.   DISCUSSION

---

[3] This Court finds interesting a comment contained within Plaintiff's Opposition to the instant
Motion.  When discussing the standard of review applicable to the within matter, Plaintiff states
that she "makes this request for denial of the Motion to Dismiss in light of the fact that
Defendants have had sufficient time to investigate this claim; have had full notice of all the
claims asserted in that Plaintiff properly filed a Charge of Discrimination with the EEOC and
PHRC; and Defendants had the opportunity to engage in the investigative process of Plaintiff's
allegations prior to the Complaint being filed.  Here, Defendants seek a harsh remedy of
dismissal on technicality only after lying in wait."  (Pl.'s Mem. Opp'n Mot. Dismiss 5-6).  If
such was the case, there would never be any motions to dismiss regarding employment
discrimination claims.  The fact that a prior EEOC or PHRC investigation has been conducted
does not relieve Plaintiff of his or her pleading obligations in federal court.

Moreover, although Defendants do not raise this issue in their Motion to Dismiss, Plaintiff's
Complaint leaves question as to whether or not she has in fact exhausted her administrative
remedies.  In Paragraph 3 of Plaintiff's Complaint, she states "Plaintiff has complied with all
jurisdictional prerequisites including those set forth in 42 U.S.C. § 2000 e-5(f) and was issued a
Notice of Right to Sue by the Equal Employment Opportunity Commission on or about February
5, 2013."  (Compl. ¶ 3).  Plaintiff does not attach this Notice as an exhibit to her Complaint.
"While there is no requirement that a right to sue letter be attached to a complaint, a
discrimination suit is limited to claims asserted in the EEOC charge, and therefore, Plaintiff must
allege the basis for the charge. Plaintiff has failed to do so here. Consequently, the Court will
dismiss the Complaint for failure to sufficiently plead exhaustion, but will grant Plaintiff leave to
amend to identify the claims asserted in the EEOC charge, which may be done by attaching the
right to sue letter."  *Butler v. BTC Foods, Inc.*, Civ. No. 12-492, 2012 U.S. Dist. LEXIS 151582,
at *15-16 (E.D. Pa. Oct. 19, 2012).  In the instant matter, this Court has no way of knowing
exactly what issues were raised with the EEOC and can therefore not be certain that Plaintiff has
exhausted her administrative remedies with regard to same.

### A. Title VII and the ADEA

#### i. Claims Against Joan Newfield in Her Individual Capacity

Both Title VII and the ADEA create a cause of action against an employer for workplace discrimination, however neither statute extends that cause of action to the employer's employees in their individual capacity. *See Hill v. Kutztown*, 455 F.3d 225, 246 n.29 (3d Cir. 2006) (" . . . the ADEA does not provide for individual liability."); *Youssef v. Dep't of Health & Senior Serv.*, 524 F. App'x 788, 789 (3d Cir. 2013) (affirming district court's dismissal of Title VII and ADEA claims against human resources director named in her individual capacity).

Defendant Newfield, as an employee of Briarleaf, has been accused of employment discrimination while discharging her responsibilities as a Briarleaf employee. Newfield, as a Briarleaf employee acting in her official capacity, may not be held liable in her individual capacity under the ADEA or Title VII. Accordingly, said claims against Newfield, in her individual capacity, shall be dismissed with prejudice.

#### ii. Claims Against Briarleaf

Plaintiff has alleged discrimination, hostile work environment and retaliation claims against Briarleaf but fails to support her allegations with "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" as is required by *Iqbal* and *Twombly*.

For purposes of evaluating a motion to dismiss, a court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions couched as fact. *Santiago v. Warminster*, 629 F.3d 121, 129–30 (3d Cir. 2010); see *also Iqbal*, 129 S.Ct. at 1947. Although detailed allegations are not required, a minimal amount of factual content clearly is. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Plaintiff cannot meet her pleading burden

4

"simply by asserting an event and then asserting that it was motivated by [discriminatory animus]." *See Davis v. Newark*, 285 F. App'x 899, 903 (3d Cir. 2008). Rather, she must plead factual details that give rise to that conclusion. *Id.*

The legal conclusions that are pervasive throughout Plaintiff's Complaint shall be disregarded for purposes of assessing Defendants' Motion to Dismiss. *See Twombly*, 550 U.S. at 555. Similarly, all assertions that amount to no more than recitations of certain elements of Plaintiff's claims unaccompanied by any factual detail will not be considered. *Id.* ("[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

### (a) Discrimination

Employers are prohibited from discriminating against an employee based on his or her race or national origin pursuant to Title VII. 42 U.S.C. § 2000e–2(a). Similarly, the ADEA prohibits an employer from discriminating against an employee based on their age. 29 U.S.C. 623(a). Title VII discrimination claims are analyzed under the familiar *McDonnell Douglas*[1] burden-shifting framework. *Jones v. School Dist. of Philadelphia*, 198 F.3d 403 (3d Cir. 1999). Under this standard, a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) the employee is a member of a protected class; (2) the employee is qualified for the position; (3) the employee suffered an adverse employment action; and (4) the action was taken under circumstances that give rise to an inference of unlawful discrimination. *Jones*, 198 F.3d at 410-11.  If a plaintiff is successful, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. Once a legitimate reason for the employment action is presented, the burden shifts back to the plaintiff to show that the employer's proffered reason was in fact pretext for

---

[1]   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

discrimination.  *Id.* at 804.  This framework applies equally to age-based discrimination under the ADEA and race or national origin discrimination under Title VII. *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995).

Plaintiff herein was born on November 2, 1947.  (Compl. ¶ 12). Being over the age of forty, she is therefore a member of a protected class under the ADEA. *See Simpson v. Kay Jewelers*, 142 F.3d 639, 650 (3d Cir. 1998). Plaintiff has also pleaded that she is "an adult female of Haitian descent," who immigrated to the United States of America from Haiti in 1981, therefore she is a member of a protected class under Title VII for purposes of both race and national origin discrimination. (Compl. ¶¶ 11, 16); *see also* 42 U.S.C. § 2000e–2(a).

Whether a plaintiff was qualified for the position from which he or she was terminated is judged by an objective standard. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995). The "question of whether an employee possesses a subjective quality . . . is better left to consideration of whether the employer's nondiscriminatory reason for discharge is pretext." *Id.* An extended period of employment in a particular position gives rise to an inference that a plaintiff was objectively qualified for that position. *See Chapman v. American Institute of Certified Public Accountants*, 233 F. App'x 141, 143 (3d Cir. 2007) (fact that plaintiff worked for nearly two years in the position from which he was terminated gave rise to inference that he was qualified for his position). Plaintiff was hired and subsequently employed by Defendants for nearly ten years before being terminated. (Compl. ¶¶ 17, 30).  Applying the appropriate inference to the case at bar, this Court finds no indication at this stage of the proceedings that Plaintiff was not objectively qualified for the position.

Next, Plaintiff must plead facts sufficient to infer that she suffered an adverse employment action.  The Supreme Court has defined a tangible, adverse employment action as a

"significant change in employment status, such as hiring, *firing*, failing to promote, reassignment, or a decision causing a significant change in benefits." *Burlington N. & Santa Fe. Ry. Co. v. White,* 548 U.S. 53, 64 (2006) (emphasis added); *see also Griesbaum v. Aventis Pharm.*, 259 F. App'x 459, 470 (3d Cir. 2007) (commenting "it is hard to understand how any employment action could be more adverse than a termination of employment."). Accordingly, Plaintiff's termination alone is sufficient to demonstrate that she was subjected to an adverse employment action for purposes of evaluating the instant Motion.

With regard to allegations that give rise to any inference of discrimination, Plaintiff's Complaint falls woefully short. A plaintiff can meet this burden by showing that "similarly situated persons who are not members of her protected class were treated more favorably than the plaintiff." *See Wimbush v. UPMC Health System*, 97 F. App'x 397, 398 (3d Cir. 2004). In Paragraph Twenty-Three of her Complaint, Plaintiff alleges she "was subjected to discipline in the form of . . . suspensions and termination for conduct and/or infractions . . . for which other similarly situated Caucasian and younger employees were not disciplined." (Compl. ¶ 23). Such boilerplate language simply does not suffice. Accordingly, Plaintiff's Complaint fails to adequately plead discrimination and her claim for same must be dismissed.

### (b) Hostile Work Environment

In order to sustain a hostile work environment claim pursuant to Title VII, Plaintiff's Complaint must contain facts to plausibly show: "(1) that [she] suffered intentional discrimination because of race; (2) that the discrimination was severe or pervasive; (3) that the discrimination detrimentally affected [her]; (4) that the discrimination would have detrimentally affected a reasonable person of the same race in [her] position; and (5) that there is a basis for vicarious liability." *Brooks v. CBS Radio, Inc.,* 342 F. App'x 771, 775 (3d Cir. 2009). "In

employing this standard, a court must evaluate the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance."  *Exantus v. Harbor Bar & Brasserie Rest.,* 386 F. App'x 352, 354 (3d Cir. 2010).  The same criteria are utilized when assessing a hostile work environment claim based on age.  *Slater v. Susquehanna County*, 465 F. App'x 132, 138 (3d Cir. 2012).

Although Plaintiff's hostile work environment claim cannot survive without adequately pleading the discrimination element, this Court will nevertheless assess the remaining factors.

With specific regard to the second element of "severe or pervasive," a plaintiff must show that the work environment was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).  The Supreme Court has made it clear that Title VII is "not a general civility code." *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998). Further, Title VII "does not mandate a happy workplace." *Jensen v. Potter*, 435 F.3d 444, 451 (3d Cir. 2006), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). A hostile work environment claim requires discrimination based on a protected characteristic that is "severe enough to affect the psychological stability of a minority employee." *Andrews v. Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990).

The Supreme Court has formulated a framework for analyzing whether conduct is sufficiently severe and pervasive: "whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark Cnty. Sch.*

*Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001). In the matter before this Court, Plaintiff's Complaint is devoid of any facts that could plausibly show the alleged discrimination was severe or pervasive. Paragraphs Twenty-Three and Thirty-Two of Plaintiff's Complaint relate to the conditions of her work environment, However, neither paragraph contains factual allegations to even remotely show that Plaintiff was subjected to a work environment that was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Nat'l R.R.*, 536 U.S. at 116.

Based solely upon an extremely generous reading of the allegations set forth in Plaintiff's Complaint, the most this Court can conclude is that the actions complained of were isolated incidents, rather than a pervasive course of conduct reaching the level of a hostile work environment. *See Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (". . . isolated incidents (unless extremely serious) will not amount to a hostile work environment."). Plaintiff has not included any allegations to sufficiently indicate she was subjected to physically threatening or humiliating conduct, nor has she made any sufficient allegations to plausibly demonstrate that her work performance suffered as a result of being disciplined by the Defendants. *Clark Cnty. Sch. Dist.*, 532 U.S. at 270–71 (discussing existence of physical threats, humiliation, and detrimental effect on work performance as indicators of a hostile work environment).

Because a hostile work environment claim requires discrimination based on a protected characteristic that is "severe enough to affect the psychological stability of a minority employee," a simple statement that Plaintiff was disciplined an undisclosed number of times for undisclosed infractions does not allege conduct that rises to the level of creating a hostile work environment. *See Davis v. Newark*, 285 F. App'x 899, 903 (3d Cir. 2008) (dismissing hostile

work environment claim because the frequency and severity of the conduct was minimal and the plaintiff failed to allege that any of the events involved physical threats or humiliations, or unreasonably interfered with her work performance).  Accordingly, Plaintiff's hostile work environment claim shall be dismissed.

**(c)      Retaliation**

To prevail on a cause of action for retaliation under Title VII or the analogous provision of the ADEA, Plaintiff must demonstrate that (1) she engaged in an activity protected by Title VII or the ADEA; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Moore v. Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006); *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995).

With regard to the first element, an employee has engaged in conduct protected by the ADEA when he or she "has *opposed* any practice made unlawful by . . . section 623" of the ADEA. *See Barber v. CSX Distrib. Serv.*, 68 F.3d 694, 702 (3d Cir. 1995) (emphasis added); 29 U.S.C. § 623(d) (delineating prohibited conduct by employer with regard to age of employee). Similarly, "Title VII's anti-retaliation provisions protect individuals who . . . *oppose* employment practices made illegal by Title VII." *Curay-Cramer v. Ursuline Acad.*, 450 F.3d 130, 134 (3d Cir. 2006) (emphasis added).

The Third Circuit has required plaintiffs to demonstrate that they made *particularized statements* in opposition to discrete past events that they believed were prohibited by either Title VII or the ADEA, in order to establish that they engaged in opposition activity.  *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-702 (3d Cir. Pa. 1995) (finding  a plaintiff's "letter to Human Resources complain[ing] about unfair treatment in general and express[ing] his

10

dissatisfaction with the fact that someone else was awarded the position, but . . . not specifically complain[ing] about age discrimination" did "not constitute the requisite 'protected conduct' for a prima facie case of retaliation."). *See also Curay-Cramer,* 450 F.3d at 135 (holding that basic advocacy against a practice does not constitute protected activity for retaliation claim). Opposition to an illegal employment practice "must identify . . . the practice—if not specifically, at least by context." *Curay-Cramer*, 450 F.3d at 135.

Plaintiff herein has alleged that she complained to Defendants that she was subjected to unfair treatment, but did not explicitly or implicitly complain that a protected characteristic was the basis for that unfair treatment. Plaintiff's only mention of a complaint she made in response to Defendants' alleged conduct is found in Paragraph Thirty-Two of her Complaint which states:

> Notwithstanding, Plaintiff's complaints and clear indication to Defendant that the aforesaid comments and conduct were unwelcome, unwanted, and upsetting; the harassing conduct continued throughout the course of her employment with Defendants.

(Compl. ¶ 32).

Nowhere in her Complaint does Plaintiff claim or imply that she complained to Defendants that their behavior was discriminatory. The Third Circuit has been clear that an employee has not engaged in protected opposition activity when he or she complains about unfair treatment, but stops short of referencing a protected characteristic as the basis for the unfair treatment. *See, e.g., Curay-Cramer*, 450 F.3d at 134–35; *Barber*, 68 F.3d at 701–02. Further, any retaliation a plaintiff suffers as a result of such a deficient complaint does not entitle a plaintiff to seek redress under Title VII or the ADEA for retaliation. *Id.* Therefore, Plaintiff has failed to plead that she engaged in conduct protected by the ADEA or Title VII.

With regard to the second element necessary to prevail on a cause of action for retaliation under Title VII or the ADEA, Plaintiff's termination on January 4, 2010 by Defendants satisfies

the adverse employment action requirement. *See Abramson v. William Patterson Coll.,* 260 F.3d 265, 287 (3d. Cir. 2001) (holding that termination clearly constitutes an adverse employment action for purposes of a retaliation claim).

Lastly, Plaintiff's Complaint must adequately allege a causal connection between her participation in the protected activity and the adverse employment action. *Moore*, 461 F.3d at 340–41. The Third Circuit has "recognized two primary methods for an employee to establish a causal connection. First, "[w]here the temporal proximity between the protected activity and the adverse action is unusually suggestive, it is sufficient standing alone to create an inference of causality." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217, 232 (3d Cir. 2007). Second, if the temporal proximity is not evidence, the court must determine "whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference'" of a causal connection between the protected activity and the adverse employment action. *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)).

"While the passage of mere hours or days has been deemed unusually suggestive, courts have held that the passage of weeks, months, and years removes any suggestion of retaliatory motive." *Shenk v. Pennsylvania*, Civ. No. 11-1238, 2013 U.S. Dist. LEXIS 67495, at *21–22 (M.D. Pa. May 13, 2013) (*comparing Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (two month gap insufficient) and *Thomas v. Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three week gap insufficient) with *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two day gap unusually suggestive) and *Reinhart v. Mineral Techs., Inc.*, Civ. No. 05-4203, 2006 U.S. Dist. LEXIS 89279, at *35 (E.D. Pa. Nov. 27, 2006) (twenty-four hour turnaround unusually suggestive)). Merely engaging in a protected activity prior to suffering an

adverse employment action does not give rise to a harm cognizable as retaliation under Title VII or the ADEA. *See, e.g., Williams*, 380 F.3d at 760.

As discussed above, Plaintiff has not sufficiently alleged that she engaged in any protected activity.  Nor does she allege any timeframe.

In the absence of an unusually suggestive temporal relationship, courts look for other evidence of retaliatory animus. *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 281 (3d Cir. 2000). "Among the kinds of evidence that a plaintiff can proffer [to show a causal connection] are intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232–33 (3d Cir. 2007).

In the instant case, Plaintiff alleges that Defendants' harassing behavior continued throughout the course of her employment. (Compl. ¶ 32).  However, as the Complaint makes clear, Defendants' post-complaint behavior was the same behavior upon which she based the actual complaint. (*Id.*)  Plaintiff has not pleaded any factual allegations to show that Defendants behaved differently in any way toward her after she complained about how she was being treated. Rather, she seems to have taken the position that Defendants' behavior was the same throughout the course of her employment. (*Id.*) To show retaliatory animus, a plaintiff must allege that her employer exhibited new, antagonistic behavior in response to her complaint; not that their behavior remained consistent. *See Randler v. Kountry Kraft Kitchens*, Civ. No. 11-474, 2012 U.S. Dist. LEXIS 177926, at *37 (M.D. Pa. Dec. 7, 2012) (holding jokes and remarks that were not markedly different from the incidents the plaintiff experienced prior to her alleged complaint did not suffice to show a causal connection between her complaint and termination).

Therefore, Plaintiff has not shown that Defendants' conduct was motivated by a retaliatory animus.

Plaintiff has alleged absolutely no causal connection between her insufficiently-pled protected activity and her termination. *See Twombly*, 550 U.S. at 562.  Accordingly, her retaliation claim shall be dismissed.

### B.  Pennsylvania Human Relations Act

The Third Circuit has routinely applied Title VII, the ADEA, and the PHRA identically because the anti-retaliation and hostile work environment provisions of the ADEA and Title VII are nearly identical, as are the anti-retaliation and hostile work environment provisions of the PHRA. *See, e.g., Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 567 (3d Cir. 2002) (interpreting the PHRA identically to federal anti-discrimination laws). Because Plaintiff failed to state a claim for discrimination, retaliation or hostile work environment against the Briarleaf Defendants under Title VII or the ADEA, her claims brought under the PHRA similarly fail.

Although individual employees may not be held liable under Title VII or the ADEA, the PHRA provides for individual liability of a supervisor who aids and abets an employer's prohibited conduct. *Dici v. Pennsylvania*, 91 F.3d 542, 552–53 (3d Cir. 1996). However, "[n]on-employers . . . cannot violate PHRA § 955(e) when there is no corresponding § 955(a) violation by an employer to aid and abet." *Eldeeb v. Allied Barton Sec. Serv.*, No. 07-669, 2008 U.S. Dist. LEXIS 67515, at *31 (E.D. Pa. Aug. 28, 2008). *See also Kaniuka v. Good Shepherd Home*, Civ. No. 05-2917, 2006 U.S. Dist. LEXIS 57403, at *32 (E.D. Pa. Aug. 15, 2006) (same).

In Paragraph Twenty-Eight of her Complaint, Plaintiff states that "[a]t all times material hereto, Newfield *aided and abetted* the aforementioned harassment, hostile work environment, and discrimination to which Barthold was subjected." (Compl. ¶ 28) (emphasis added). This

14

allegation amounts to no more than a conclusory statement and a recitation of an element of supervisory liability pursuant to section 955(e) of the PHRA which makes it illegal "[f]or any . . . employee . . . to aid . . . [or] abet . . . the doing of any act declared by this section to be an unlawful discriminatory practice." 43 P.S. § 955(e).

Aside from this conclusory paragraph, Plaintiff has not pleaded any details regarding the role Newfield played in the alleged discriminatory conduct. Since Plaintiff failed to sufficiently plead a discrimination, retaliation or hostile work environment claim with respect to Briarleaf, there was nothing for Defendant Newfield to aid or abet and there can be no violation of the PHRA.

Accordingly, all claims brought pursuant to the PHRA against all Defendants shall be dismissed.

### C. Amendment

In her Response to Defendants' Motion, Plaintiff asks that in the event her Complaint is found to be deficient, she be granted leave to amend. "Generally, leave to amend a complaint should be given when counts in the complaint are dismissed for failure to state a claim." *Watts v. Blake-Coleman*, Civ. No. 2011-61, 2012 U.S. Dist. LEXIS 43454, at *21-22 (D.V.I. Mar. 29, 2012). "However, that allowance is not absolute . . . A plaintiff's 'failure to provide a draft amended complaint' is 'an adequate basis on which the court could deny [a] plaintiff's request' to amend [because] [w]ithout a proposed amended complaint, a court 'cannot evaluate the merits of a plaintiffs' request' and has 'nothing upon which to exercise its discretion.'" *Id. See also Aileron Solutions v. Health Mkt. Sci., Inc.*, Civ. No. 11-4244, 2013 U.S. Dist. LEXIS 137834, at *5 (E.D. Pa. Sept. 25, 2013) (recognizing that a plaintiff's failure to attach a proposed amended complaint is fatal to a request for leave to amend) (citing *Fletcher-Harlee Corp. v. Pote Concrete*

*Contrs., Inc.,* 482 F.3d 247. 252 (3d Cir. 2007) (noting that "to request leave to amend a complaint, the plaintiff must submit a draft amended complaint to the court so that it can determine whether amendment would be futile" and finding failure to do so "fatal to a request for leave to amend.") and *Lake v. Arnold*, 232 F.3d 360, 374 (3d Cir. 2000) (concluding that a plaintiff's "failure to provide a draft amended complaint would be an adequate basis on which the court could deny the plaintiff's request [for leave to amend].")).

Despite the foregoing, this Court is fully cognizant of the fact that leave to amend must be freely granted when justice so requires.  Fed.R.Civ.P. 15(a)(2).  As such, Plaintiff shall be permitted an opportunity to amend her Complaint.

## IV.   <u>CONCLUSION</u>

For the reasons set forth hereinabove, Defendants' Motion to Dismiss shall be granted and Plaintiff shall be afforded leave to amend her Complaint.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II     J.

16